IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ANGELA PAGE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 2:25-cv-02339-JWB-GEB |
| | ) |
| **BWW RESOURCES, LLC** | ) |
| **AND ITS REPRESENTATIVES** | ) |
| | ) |
| **Defendant.** | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**

The "right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment." *Jacob v. City of New York*, 315 U.S. 752, 752, 62 S. Ct. 854, 854 (1942). And courts must "indulge every reasonable presumption against waiver" of fundamental constitutional rights, which includes the right to trial by jury. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 682 (1999).

Here, Defendant asks the Court to ignore this mandate by essentially enforcing a few lines within a sprawling arbitration agreement that Defendant already conceded in its own Motion was largely unenforceable with respect to the particular claims at issue. More importantly, Defendant's argument for enforcing a supposed "agreement" by Plaintiff to waive her right to a jury is threadbare — as explained further, *infra.*, Defendant cites four factors a court weighs when determining whether a jury trial waiver is knowing and voluntary. At best, two of the four factors weigh in Defendant's favor.

1

The Motion to Strike fails as a matter of law and should be **DENIED.**

***Plaintiff Did not Knowingly and***
***<u>Voluntarily Waive a Jury Trial</u>***

Later sections of this Memorandum will argue why Plaintiff's jury demand should remain in place based on the general unenforceability of the alleged arbitration agreement. But first and foremost, it is important to show that Plaintiff in no way **"knowingly and voluntarily"** waived her right to a jury trial, *see Hulsey v. West*, 966 F.3d 579, 581 (10th Cir. 1992), and Defendant **does not meet its burden** to prove that the balancing of four factors establishes Plaintiff's knowing and voluntary waiver.

This Court has acknowledged four factors it must weigh to determine whether a jury trial waiver is knowing and voluntary: (1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate the contract terms. (*See* Doc. 10, ¶ 7)(*see also Walker v. SC Realty Services, Inc.,* 2016 WL 4245487 at *2 (D. Kan. Aug. 11, 2016)).

Plaintiff agrees with Defendant's assertion that the waiver was conspicuous. It was written in boldface type and partially in all capital letters (*See* Doc. 10, ¶ 8). The problem? That's where the balancing test begins and ends to weigh in Defendant's favor.

The second factor requires the Court to determine whether there was a gross disparity in bargaining power between the parties. *Walker* at *2. While a "gross" disparity in bargaining power appears to be high bar to meet, this Court has also provided insight more recently as to what may

2

give rise to that standard.[1] In *Little v. Gray Media Group, Inc.,* 717 F.Supp.3d 1058 (D. Kan. Feb. 14, 2024), the Court acknowledged that because the plaintiff there had two decades of experience in the broadcast industry, worked for her employer for five years, and had gone through two rounds of contract negotiations with that employer and with an agent working on her behalf — securing a promotion, new title, and higher pay — that experience (going so far as to call plaintiff a "sophisticated businesswoman") weighed in favor of the employer that a "gross disparity" in bargaining power did not exist. *Id.* at 1063.

The type of facts that weighed in favor of the employer in *Little* simply are not present in this case. While Plaintiff is a perfectly capable adult, she was 26 years old at the time she supposedly signed the alleged arbitration agreement and jury waiver. She had worked most of her life in the food service industry, where arbitration agreements that waive one's right to a jury trial are not necessarily as common — or to be expected by a reasonable person in that industry. *Hudson v. BAH Shoney's* Corporation, 263 F.Supp.3d 661, 668 (M.D. Tenn. 2017)[2]. The restaurant industry is not like the broadcast television industry that the Court analyzed in *Little*. Restaurants are well known for having frequent staff turnover, especially within a large, nationwide chain like Defendant. And it can be reasonably assumed that nearly every restaurant one works at will have different policies than the last.[3]

---

[1] This Court has acknowledged that there "is an inevitably [sic] disparity in bargaining power between an employer and an employee", but that does not automatically mean it meets the standard of "gross disparity" *Bandokoudis v. Entercom Kansas City,* LLC, 2021 WL 1575222, at *1 (D. Kan. 2021).

[2] Restaurant employee's experience, background, and education constituted a factor weighing *strongly* against finding that she knowingly and voluntarily waived … her Seventh Amendment right to jury trial, with respect to Title VII claims for sexual harassment and retaliation.

[3] *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381-82 (6th Cir. 2005) ("Plaintiffs were typically hired on the spot after a brief interview, during which the hiring manager hurriedly presented them with various documents that they were instructed to sign in order to be considered for a job … Plaintiffs were given no option to revoke their consent to the Arbitration Agreement.")

In fact, as Plaintiff asserts in a Declaration attached herewith, she had never encountered an arbitration agreement or jury demand in any of the previous employment roles she held. All told, the nature of the relationship between a chain restaurant and an employee with no power to bargain or negotiate the terms and conditions of her employment should weigh at least moderately in favor of Plaintiff in this case.

The third factor — the business or professional experience of the party opposing the waiver — was also discussed *supra.* While, as mentioned, Plaintiff had experience in the restaurant industry, such waivers simply are not common practice that would otherwise dictate Plaintiff knew or should have known to expect she would be asked to sign an arbitration agreement and jury waiver as a condition of her employment. As such, this favor should weigh in favor of Plaintiff.

Finally, the fourth factor for the Court to consider is whether Plaintiff had the opportunity to negotiate the contract terms. *Walker*, at 2*. This factor should perhaps weigh most heavily in favor of Plaintiff. As Plaintiff describes in her Declaration, to the extent she even remembers signing the arbitration agreement and jury waiver, it was presented to her in a manner that the documents were a required part of her employee intake paperwork before she could actually begin working. This amounts to a contract of adhesion. *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 532 Fed.Appx. 813, 818 (10th Cir. 2013) ("An adhesion contract is a 'standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining.'").[4] Defendant was clearly in a superior bargaining position, and the posture of Defendant as well as the language of the agreement

---

[4] Plaintiff points the Court to one particularly concerning provision of the arbitration agreement, which lends further credibility to its status as a contract of adhesion. *See* Doc. 10-1, p. 10. Paragraph 16 states: "New employees must sign this Agreement *as a condition of employment.* **CONTINUING YOUR NEW OR ONGOING EMPLOYMENT FOR 30 DAYS AFTER RECEIPT OF THIS AGREEMENT CONSTITUTES YOUR CONSENT TO THIS AGREEMENT WHETHER OR NOT YOU SIGN IT.**" (italicized emphasis added) (bold emphasis in original).

itself indicate its status as take-it-or-leave-it, without opportunity for bargaining. As such, the fourth factor should weigh heavily in favor of Plaintiff — if not serve to declare the agreement itself to be procedurally unconscionable and therefore unenforceable.

### *Defendant already conceded in its Motion to Strike that much of the arbitration agreement is unenforceable*

Even if the Court were to find Plaintiff knowingly and voluntarily waived her right to a jury (she did not), it should also consider Defendant's concession that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C.A. § 402, "limits"[5] the ability to enforce the arbitration agreement as written.

Defendant further states in its contentions about the EFAA that jury waivers "do not restrict an employee's right to avail themselves of the court system." While it is first worth pointing out that the EFAA is entirely silent on jury waivers, and Defendants appear to be drawing their own conclusion on a jury waiver's applicability within the EFAA, courts across the country have regularly found that jury waivers in and of themselves are not contrary to public policy. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (internal citations omitted).

But perhaps they should be in limited circumstances such as the present case. Generally, a court may not enforce a contract term contrary to public policy. *Sensoria, LLC v. Kaweske*, 581 F.Supp.3d 1243 (D. Colorado 2022) (citing *McCracken v. Progressive Direct Ins. Co.*, 896 F.3d 1166 (10th Cir. 2018). The EFAA, passed in 2022, was intended to protect survivors of sexual

---

[5] Plaintiff notes that this description, *see* Doc. 10 ¶ 7, is a misstatement of the law. 9 U.S.C.A. § 402(a) states in part that "… **no** predispute arbitration agreement or predispute joint-action waiver **shall be valid or enforceable**…" (emphasis added). Referring to this language as a "limit" is incorrect — the law clearly places an outright prohibition on such agreements.

harassment and assault. Legislative history of the bill further indicates such intent.[6] Therefore, between the EFAA, Title VII, and other laws and public sentiment generated in the last decade with the advent of the "Me Too" movement, it is by no means unreasonable to say that a waiver of one's right to be heard by a jury of their peers on claims of sexual harassment and retaliation — like Plaintiff has here — is against public policy. Such a finding appears to be a case of first impression for this Court, and Plaintiff finds no precedent that would bind this Court one way or another to make such a determination.

Moreover, nearly the entirety of the agreement Defendant seeks to enforce deals with arbitration of claims arising out of, related to, or in connection with any aspect of the applicant's employment relationship with the company and the purported desire to arbitrate such claims. Plaintiff can find just one paragraph (containing six lines) of the twenty-one (21) part, four-page agreement that pertains to the jury waiver. And though it does state that "if the provisions of this Agreement requiring arbitration of disputes between you and the Company are found to be invalid, unenforceable or void, then…" this does not necessarily function as a clear and complete severability or savings clause which would otherwise save this one provision of the otherwise unenforceable agreement. And in fact, the agreement itself contains no such clause.

However, ultimately, the public policy implications of this particular jury waiver may be a non-issue. As detailed, *supra*, Plaintiff clearly did not knowingly and voluntarily waive her right to a jury trial. It is Defendant's burden to show the four factors of a knowing and voluntary jury waiver weigh in their favor. With only one factor clearly weighing in their favor, they plainly have

---

[6] "…we agreed to come to the floor and ensure the congressional intent of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022 was crystal clear … I care very much and support survivors of sexual harassment or assault having access to the appropriate process to ensure swift justice, but it is also very important to me that *those claims stand separate from any other kind of claim."* 168 Cong. Rec. S624-01, 2022 WL 413089 (testimony of Iowa Sen. Joni Ernst).

not done so. While yes, the language waiving the right to a jury is in capital letters, bold and conspicuous, that is the only argument on Defendant's side. Plaintiff did not — and could not reasonably been expected to have — the business or professional experience necessary to know that she was signing away her constitutional right to a trial by jury in a dispute that had not even arisen. And if that wasn't enough, the dramatically unequal positions of the two parties here — namely that the agreement was both presented to Plaintiff and contained language stating it was required to begin work — show a complete lack of bargaining ability for Plaintiff to the point the agreement as a whole should be deemed an unenforceable contract of adhesion.

Defendant's Motion should be **DENIED.**

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Strike Plaintiff's Jury Trial Demand should be **DENIED** for *all* purposes — both the strong legal basis within this memorandum and the Defendant's failure to even begin carrying its burden of proof.

Respectfully submitted,

**GRISSOM MILLER LAW FIRM, LLC**

<u>/s/ Conner Mitchell</u>
Barry R. Grissom, #10866
Conner Mitchell, D. Kan #79215
Jake Miller, #28337
1600 Genessee Street, Ste. 460
Kansas City, MO 64102
T – 816-336-1213
F – 816-384-1623
barry@grissommiller.com
cam@grissommiller.com
jake@grissommiller.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that a true and complete copy of the above and foregoing was filed on this 8th day of August, 2025, with the Court's CM/ECF system, thereby providing service and a copy of the same to all counsel of record.

*/s/ Conner Mitchell*
